UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEYON JAQUE BROWN,

        Plaintiff,                                   Case No. 1:13-cv-1183

v.                                                     Honorable Robert J. Jonker

PETERSON PALETTA,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Keyon Jaque Brown presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). He sues the law firm of Peterson Paletta.

Plaintiff alleges that, on January 7, 2010, he received a judgment from this Court in a then-pending action, presumably *Brown v. McKee*, No. 1:09-cv-696 (W.D. Mich. Jan. 4, 2010). Plaintiff was approved for the legal writer's program at that time. He alleges that the legal writer told him that he had up to 60 days to file a notice of appeal. Plaintiff was then moved to another facility on February 8, 2010. Within a week of his arrival, he approached the legal writer at the new facility. On March 12, 2010, he was provided with a notice of appeal, which he signed on that same date.[1] The notice of appeal was received by this Court on March 16, 2010. On April 8, 2010, the Sixth Circuit issued an order to show cause why the appeal should not be dismissed as untimely. Plaintiff responded, seeking an extension of time to appeal, based on his mistaken understanding of the time limits for filing a notice of appeal under FED. R. APP. P. 4(a) (1). In an order issued July 12, 2010, the Sixth Circuit dismissed the appeal for lack of jurisdiction.

Although he does not specifically name Defendant Peterson Paletta in the body of his complaint, Plaintiff apparently intends to allege that the law firm negligently oversaw the legal

---

[1] Under Sixth Circuit precedent, the notice of appeal is deemed filed when handed to prison authorities for mailing to the federal court. *See Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A document is presumptively deemed to have been handed to prison authorities on the date it is signed. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). The notice of appeal therefore was deemed filed on March 12, 2010.

writers program, resulting in the dismissal of Plaintiff's appeal of the denial of his habeas application.² He seeks declaratory relief, together with compensatory and punitive damages.

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

---

²The MDOC has established a prison legal writer program whereby prisoners can be trained to provide assistance to other prisoners who are unable to effectively help themselves in the preparation of legal materials. *See* MDOC Policy Directive 05.03.116 ¶ P (eff. July 21, 2008). According to MDOC's policies and the allegations of the complaint, the prison legal writers work under the direction of private attorneys contracted by the MDOC, like those at Peterson & Paletta, PLC.

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

Plaintiff fails to state a claim for a variety of reasons. First, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that even constitutionally required, appointed defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the

lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003).

Here, Plaintiff is not constitutionally entitled to the appointment of counsel to represent him in a habeas corpus proceding. The state's obligation therefore is far less than that required on direct criminal appeal. As a consequence, if the payment for constitutionally required legal assistance fails to create state action, the mere payment of an attorney to oversee the provision of minimal assistance to those incapable of litigating their own claims necessarily fails as well.

Second, because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff does not indicate the constitutional basis for his claim. Arguably, Plaintiff intends to allege that he was denied his First Amendment right of access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal

information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

It is doubtful that Plaintiff could establish the actual injury element of his access-to-the-courts claim. His habeas action was dismissed on initial screening under Rule 4, RULES GOVERNING § 2254 CASES, because his claims, which principally attacked his sentencing guidelines scoring, were predominantly noncognizable state-law claims that did not implicate due process. His remaining claim, involving claims of ineffective assistance of trial and appellate counsel based on the failure to object to the scoring determinations, could not survive the doubly deferential standard applied to state-court applications of the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Finally, even assuming that Defendant is a state actor and that he could demonstrate the actual injury required for an access-to-the-courts claim, Plaintiff, at best, suggests that Defendant was negligent in its supervision of prisoners assisting others under the legal writers program. An individual defendant may not be held liable for the unconstitutional conduct of his or her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to allege that Defendant Peterson Paletta engaged in any active unconstitutional behavior.

For all of these reasons, Plaintiff fails to state a claim against Defendant Peterson Paletta.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    December 3, 2013              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE